Eastern District of Kentucky
FILED
SEP 2 7 2006
AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

CIVIL ACTION NO. 06-CV-275-JMH

TROY WATTS                                                              PETITIONER

VS:            **MEMORANDUM OPINION AND ORDER**

STEPHEN M. DEWALT, Warden                                   RESPONDENT

\*\*\* \*\*\* \*\*\* \*\*\* \*\*\*

Troy Watts, an individual presently confined at the Federal Medical Center (FMC) in Lexington, Kentucky, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241 and has paid the $5.00 district court filing fee.

This matter is before the Court for screening. 28 U.S.C. § 2243; *Demjanjuk v. Petrovsky*, 612 F. Supp. 571 (N.D. Ohio 1985) (citing *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970), *cert. denied*, 400 U.S. 906 (1970); *accord Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970)).

This is a *pro se* petition and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* petition must be taken as true and construed in favor of the petitioner. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). The Court may, however, dismiss an action *sua sponte*, should the petitioner fail to state a claim or otherwise satisfy 28 U.S.C. §1915(e)(2).

## CLAIMS

The petitioner alleges that the loss of his prison job and its rate of pay violated his rights under (1) the Constitution's First Amendment; (2) the Due Process Clause; (3) its Equal Protection guarantee; (4) two contracts which he signed; and (5) BOP policy.

## FACTUAL ALLEGATIONS

The following is a summary of the factual allegations as contained in the instant petition, accompanying memorandum, and attached documents from the petitioner's administrative efforts to get back his job and rate of pay.

Watts alleges that he worked in the prison commissary for three years, without incident, and had worked his way up to "grade 1 pay," when he was suddenly fired, for no fault of his, on December 27, 2005. He was therefore "forced" to get another prison job, and now works at UNICOR at grade 5 pay. Petitioner Watts filed an administrative complaint about the matter. A copy of the warden's response reveals that the BOP's general policy, in Program Statement 5251.05, requires job assignments to be made with consideration of the institution's security and operational needs. After stating this policy, the warden further explained about the petitioner's (and later, others') loss of employment at the commissary, as follows:

> . . . Commissary staff have decided to implement a program that rotates inmate workers through the Commissary on an annual basis. To initiate this program, the Commissary has transferred two inmates out to new jobs and will every quarter until an entire new inmate detail has taken over. The method chosen to remove the inmates is by seniority with the two most senior inmates removed first and go down the list by seniority. . . .

Attachment dated February 10, 2006.

With regard to the petitioner's constitutional and policy claims, each one was answered in the course of his appeals of the warden's decision. When he complained that his pay was vested, for instance, the BOP responded that it is true that once earned and credited to his account, his earned *pay* is considered vested; however, his *rate* of pay is not vested. Rather, "your current pay grade is commensurate with your work assignment." As to the rotation of workers such as the petitioner and

2

other commissary workers, such rotations are described as common practice by the BOP "in critical or sensitive areas" and are "designed to preserve the integrity, solvency, and effectiveness of programs." Attachment dated May 18, 2006.

The petitioner seeks a factual determination that his rights have been violated and a return to his prior rate of pay and his job in the commissary.

## DISCUSSION

It is well established that prisoners have no constitutionally protected property or liberty interest in a prison job. *Bulger v. United States Bureau of Prisoner*, 65 F.3d 48, 49 (5th Cir. 1995); *Long v. Chapleau*, 55 F.3d 326 (6th Cir. 1995) (unpublished); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989). Nor is there such an interest in a particular prison wage. *Izard v. Blair*, 173 F.3d 429, 1999 WL 96747 (6th Cir. 1999) (unpublished) (dismissing the federal prisoner's claims *sua sponte* pursuant to 28 U.S.C. §1915(e)(2)); *Salahuddin v. Coughlin*, 674 F.Supp. (S.D.N.Y. 1987).

Therefore, the petitioner's procedural due process rights were not violated. Indeed, they were not triggered, as the defendant's loss of job and loss of better pay did not impose an atypical and significant hardship on him in relation to the ordinary incidents of prison life. *Bulger*, 65 F.3d at 49-50 (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)) and rejecting the claim that BOP policies created a liberty interest). Accordingly, the petitioner's due process argument fails to state a cognizable claim and must be dismissed.

As to the claim that the change in assignments was arbitrary, the BOP's response explains a reason, applied evenly, and there is nothing in its application to this petitioner that shocks the conscience of the Court. *See Rimmer-Bey v. Brown*, 62 F.3d 789, 791 n.4 (6th Cir. 1995) (citing

3

*Rochin v. California*, 342 U.S. 165 (1951); *Mertik v. Blalock*, 983 F.2d 1353, 1367-68 (6th Cir. 1993)). Therefore, the petitioner has also failed to state a substantive due process claim.

To the extent that the petitioner asserts an equal protection claim under the Fifth Amendment, he fares no better. He has claimed a violation because "the warden decided to rotate only commissary inmates and failed to apply the same policy to the whole inmate population." Watts apparently misunderstands the reach of this constitutional provision. The equal protection clause prohibits discrimination by the government which burdens a fundamental right, targets a suspect class, or intentionally treats one differently without any rational basis for the difference. *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 312 (6th Cir. 2005). Instituting a rotational system of 1-year assignments with regard to all of the workers in the prison's commissary, while other departments at the prison do not employ such a job rotation, fails to meet any of these criteria for stating a claim. *See Robinson v. Hastings*, 2006 WL 950185 (E.D. Ky. 2006) (slip op.) (citing *Radvansky* and *Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992), *cert. denied*, 510 U.S. 842 (1993)).

The petitioner's last two claims are factually groundless. He repeatedly alleges that his First Amendment rights were violated, but he fails to state any facts to support this claim, thus making dismissal appropriate. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988). Finally, Petitioner Watts' "contracts" simply are not contracts. He apparently did sign the two attached documents about his commissary employment, but they both only set out the rules of conduct for commissary workers. The signing workers merely acknowledged that they would be governed by the rules; the BOP promised nothing. In short, the petitioner has failed to state cognizable claims and this last part of his petition also warrants dismissal.

4

Accordingly, the Court being advised, **IT IS ORDERED** that this action is **DISMISSED**, *sua sponte*, and Judgment shall be entered contemporaneously with this memorandum opinion in favor of the respondent.

This the 27th day of September, 2006.

*[signature: Joseph M. Hood]*
JOSEPH M. HOOD, CHIEF JUDGE